Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| NSB VEGA BAJA, LLC.<br><br>Recurrida<br><br>v.<br><br>RENÉ RONDA RIVERA, por sí y en representación de la ASOCIACIÓN DE PROPIETARIOS DE VEGA SERENA, INC.<br><br>Peticionaria | KLCE202301123 | *CERTIORARI*<br>Procedente de Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Núm.:<br>BY2023CV04670<br><br>Sobre: Injunction |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Martínez Cordero y la Jueza Prats Palerm[1].

Prats Palerm, Jueza Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de febrero de 2024.

Comparecen las partes demandadas-peticionarias, René Ronda Rivera, por sí y en representación de la Asociación de Propietarios de Vega Serena, Inc. (¨peticionarios¨ o ¨señor Ronda Rivera¨ y ¨APVS¨), mediante recurso de *Certiorari*. Solicita que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón (¨TPI¨) el 21 de septiembre de 2023. Mediante el referido dictamen, el TPI emitió un *injunction* preliminar para que las partes demandadas dejaran de interferir con las obras de construcción de la parte demandante-recurrida, NSB Vega Baja, Inc. (¨recurridos¨ o ¨NSB¨).

Por los fundamentos que expondremos a continuación, *Denegamos* la expedición del recurso de *certiorari*.

---

[1] Mediante Orden Administrativa OATA-2023-212 de 6 de diciembre de 2023, se designa a la Hon. Annette M. Prats Palerm en sustitución de la Hon. Giselle Romero García.

**I.**

El 23 de agosto de 2023, NSB presentó ante el TPI una petición juramentada de *Injunction Preliminar y Permanente*, así como una reclamación de daños contra el señor Ronda Rivera, en su carácter personal, y la APVS. NSB alegó que los demandados-peticionarios impidieron que llevara a cabo los trabajos para la conexión de tubería, como parte de la infraestructura del proyecto residencial, La Sabana. Añadió que, según surge del permiso de urbanización aprobado por la Oficina de Gerencia de Permiso ("OGPe") y las recomendaciones de la Autoridad de Acueductos y Alcantarillados ("AAA"), la tubería sanitaria de La Sabana deberá ser conectada a la tubería existente en la Urbanización Vega Serena. A su vez, adujo que para dicha conexión se constituyó una servidumbre entre los predios del proyecto La Sabana y la Urb. Vega Serena.

Ante la imposibilidad de llevar a cabo la obra, debido a los actos del señor Ronda Rivera y la APVS, NSB acudió en auxilio del TPI para que se les ordenara a los demandados-peticionarios el cese y desista de la interferencia con las obras de construcción. Argumentaron que la obstaculización perpetrada por los demandados-peticionarios les han ocasionado daños. Alegaron que el atraso en las obras acarrea intereses diarios asociados al financiamiento del proyecto. Además, discutieron que las actuaciones acarrean pérdidas económicas en la medida en que se paraliza la obra de construcción, teniendo que sufragar los costos de movilización de empleados, equipo y seguridad. Por último, adujeron que la paralización conlleva incumplimientos contractuales con la entrega de las unidades de vivienda ya vendidas.

Luego de varios trámites, se llevó a cabo una Vista Evidenciaria para dilucidar si procedía la concesión del *Injunction*

preliminar. El TPI advirtió a las partes que la vista únicamente atendería el interdicto preliminar. Añadió que, aun no se estaría evaluando la totalidad de la controversia (Transcripción de 1 de septiembre de 2023, págs. 29-30).

El 21 de septiembre de 2023, el TPI emitió una *Resolución* sobre lo dilucidado en la vista. Mediante el referido dictamen, el TPI declaró *Ha Lugar* la petición de *Injunction* Preliminar. Fundamentó su decisión en las siguientes determinaciones de hechos:

1. La parte demandante, NSB Vega Baja LLC. es la desarrolladora del proyecto Residencial denominado La Sabana.

2. La parte demandante cuenta con un permiso de construcción PCOC-028599 para la construcción de las obras de infraestructura del proyecto La Sabana. Este permiso es final, firme e inapelable.

3. La parte demandante cuenta con un permiso de construcción PCOC-019092 para la construcción de 183 unidades de vivienda del proyecto La Sabana. Este permiso es final, firme e inapelable.

4. La AAA emitió un endoso condicionado bajo número AAA-RN-18-74-0002 el cual especifica el punto de conexión de la tubería sanitaria del proyecto La Sabana con la Urb. Vega Serena.

5. El endoso de la AAA forma parte del permiso de construcción PCOC-028599 para obras de infraestructura.

6. La vigencia de ambos permisos de construcción y el endoso de la AAA quedaron interrumpidos al iniciarse las obras de construcción.

7. La parte demandante y el desarrollador de la Urb. Vega Serena, VSVB Development, LLC, suscribieron la Escritura Pública Número 150, sobre Constitución de Servidumbres Reales- Sistema Sanitario Urbanización ¨La Sabana¨ la cual adopta los planos endosados por la AAA.

8. La parte demandada impidió que la demandante realizara la conexión de la tubería sanitaria realizada en el permiso de construcción.

9. La conexión de la tubería sanitaria es necesaria para brindarle el servicio a las residencias que se desarrollan en el proyecto La Sabana.

10. Dicho proyecto necesita culminar para la venta de las unidades de vivienda. De las cuales 43 ya están construidas.

11. También es necesario para que el banco pueda llevar a cabo el proceso de financiamiento para la venta.

12. El servicio del agua es uno esencial para la vida. Sin este es imposible que se pueda desarrollar y vender un proyecto de construcción de viviendas.

Así, resolvió que la parte demandada-peticionaria no podía obstaculizar trabajos de utilidad pública debidamente autorizados por agencias gubernamentales. Además, determinó que se

estableció una servidumbre de paso para la tubería sanitaria mediante escritura pública entre los dueños de las propiedades, lo cual constituye un gravamen real sobre ambas propiedades. También, reconoció que la parte demandada ejerce actos de administración sobre los elementos comunes de la Urb. Vega Serena, pero esto no los facultaba a impedir que se lleven a cabo los trabajos requeridos por la parte demandante. A tales efectos, el TPI ordenó lo siguiente:

1. Las partes demandadas [...] deberán de forma inmediata cesar y desistir de interferir con las obras de construcción [...].
2. Las partes demandadas [...] deberán permitir sin dilación de clase alguna a la parte demandante [...] a que tengan acceso a la propiedad de la Urb. Vega Serena donde se hará la conexión de la tubería sanitaria.
3. La parte demandante deberá tomar todas las medidas de seguridad necesarias para llevar a cabo los trabajos [...] y deberá dejar el área en iguales o mejores condiciones en las que la encontró.
4. Las representaciones legales de ambas partes coordinarán la fecha y hora en que la conexión se llevará a cabo. [...]
5. No se hará excavación más allá de la estrictamente necesaria. [...]
6. La parte demandante prestará fianza de $5,000.00, para llevar a cabo los trabajos aquí descritos.

El 1 de octubre de 2023, los demandados-peticionarios presentaron una *Urgente Moción Solicitando Determinaciones de Hechos y Conclusiones de Derecho Adicionales, y Reconsideración de Resolución*. La moción fue declarada *No Ha Lugar* mediante *Resolución* dictada el 6 de octubre de 2023.

Inconformes, el 11 de octubre de 2023, el señor Ronda Rivera y la APVS presentaron una *Petición de Certiorari*. Solicitaron la revisión de la *Resolución* del 6 de octubre de 2023. Realizaron los siguientes señalamientos de error:

Erró el Hon. TPI en su Resolución al no determinar que el recurrido, NSB, no tiene derechos reales, ni propietarios ni por constitución de servidumbre, sobre terrenos adentro de la Urb. Vega Serena.

Erró el Hon. TPI en su Resolución al anteponer los derechos derivados de un permiso de una agencia otorgados al recurrido a los derechos fundamentales constitucionales de pleno dominio y de servidumbres en equidad de los peticionarios, anulando los últimos.

> Erró el Hon. TPI al exceder su jurisdicción y modificar los parámetros de un permiso otorgado por la OPGe mediante su Resolución, en contravención a la autoridad excluyente de la OPGe para ello según la Ley Núm. 161-2009.
>
> Erró el Hon. TPI al expedir el recurso de injunction cuando NSB no demostró tener un derecho claro para ello y admitió que tenía otro remedio en Ley para completar su construcción, o sea, sin cumplir con los criterios para la expedición del auto extraordinario.

Además, alegaron que la conexión de la tubería sanitaria de La Sabana a la de Urb. Vega Serena empeoraría el problema que presuntamente tienen de desbordes del sistema de alcantarillado.

Subsiguientemente, el 12 de octubre de 2023, los peticionarios presentaron una *Urgente Solicitud de Auxilio de Jurisdicción*. Solicitaron que ordenáramos la paralización de las obras de construcción hasta tanto este Tribunal no emitiera un fallo sobre el recurso de *certiorari* presentado.

Ese mismo día, emitimos una *Resolución* otorgándole a NSB hasta el 13 de octubre de 2023 para exponer las razones por las que no debíamos ordenar la paralización de los efectos del *injunction.*

El 13 de octubre de 2023, NSB presentó su *Moción en Cumplimiento de Orden y en Oposición a ̈Urgente Solicitud de Auxilio de Jurisdicción ̈*. Argumentaron que los peticionarios habían desplegado una conducta temeraria al impedir la ejecución de las obras. Por tanto, alegaron que se vieron obligados a incurrir en gastos considerables debido a la paralización de las obras y el presente litigio. En consecuencia, solicitaron que declaráramos *No Ha Lugar* la Solicitud de Auxilio de Jurisdicción e impusiéramos a los peticionarios el pago de gastos, costas y honorarios de abogado.

Durante esa misma fecha, ordenamos mediante *Resolución* la paralización de los efectos del *Injunction* Preliminar hasta que este Tribunal resolviera. Además, le concedimos a los peticionarios un término de quince (15) días para presentar la transcripción de la prueba oral estipulada.

El 16 de octubre de 2023, NSB presentó una *Urgente Solicitud de Pronunciamiento, Aclaración de Resolución y para que se Imponga Fianza.* Alegaron que la Resolución de este Tribunal no expuso los fundamentos en que descansó nuestra determinación. A tales efectos, solicitaron que aclaráramos el alcance de la *Resolución* sobre los trabajos paralizados y sobre el requisito de fianza que garantice el pago de los daños que pudieran ser ocasionados por la paralización de las obras.

Posteriormente, el 17 de octubre de 2023, emitimos una *Resolución* concediéndole al señor Ronda Rivera y a la APVS hasta el 19 de octubre de 2023 para que se expresaran respecto a la solicitud de NSB.

El 17 de octubre de 2023, los peticionarios procedieron a presentar una *Moción en Cumplimiento de Orden.* Solicitaron que declaráramos *No Ha Lugar* la solicitud de imposición de fianza por no ser procedente en derecho.

Durante ese mismo día, los peticionarios presentaron una *Proposición de Transcripción de Prueba Oral* solicitando autorización para presentar la transcripción de la prueba testimonial vertida.

El 30 de octubre de 2023, emitimos una *Resolución* atendiendo las mociones presentadas por las partes. En primer lugar, declaramos *sin lugar* la solicitud de aclaración de la *Resolución* del 13 de octubre de 2023 e imposición de fianza. En segundo lugar, también declaramos *sin lugar* la *Proposición de Transcripción de Prueba Oral* y se les otorgó a los peticionarios un término final de cinco (5) días para someter la transcripción de la prueba oral.

Así las cosas, el 6 de noviembre de 2023, los peticionarios sometieron una *Moción Anunciando Estipulación de la Transcripción* presentando las transcripciones solicitadas.

El 7 de noviembre de 2023, este Tribunal emitió una *Resolución* dando por enterado la estipulación de la transcripción. Además, advertimos que los términos concedidos en la *Resolución* del 13 de octubre de 2023 continuaban vigentes.

Acto seguido, el 13 de noviembre de 2023, los peticionarios presentaron un *Alegato Suplementario* alegando que hubo apreciación errónea de la prueba testifical por parte del TPI.

El 14 de noviembre de 2023, mediante *Resolución*, apercibimos a los recurridos de que tenían hasta el 13 de diciembre de 2023 para presentar su oposición al recurso suplementario presentado por los peticionarios.

En cumplimiento, el 13 de diciembre de 2023, NSB presentó su *Oposición a Petición de Certiorari*. Respecto a los señalamientos de error, argumentaron que: (1) en virtud de la Escritura Pública Número 150, poseen los derechos reales necesarios para establecer la conexión sanitaria; (2) la Calle 23 de Urb. Vega Serena, donde se realizó el punto de conexión, no le pertenece a APVS; (3) el TPI no modificó el permiso otorgado por la OGPe, y; (4) el endoso AAA-RN-18-74-0002 emitido por la AAA especifica que el punto de conexión de la tubería entre La Sabana y la Urb. Vega Serena será en la Calle 23.

Por otro lado, añadieron que el recurso de *certiorari* no cumple con la Regla 40 del Reglamento de este Tribunal. Señalaron que el recurso contiene argumentos impertinentes a la Resolución impugnada, ya que no inciden sobre la orden de *Injunction Preliminar*. Además, reiteraron que la Resolución meramente atiende una petición de *Injunction Preliminar* y que, en consecuencia, queda pendiente ante el TPI la solicitud de daños y de *Injunction Permanente*. En virtud de esto, NSB solicitó que deneguemos la expedición del auto de *certiorari*.

Por su parte, el 13 de diciembre de 2023, los peticionarios presentaron una *Moción Informativa y Aclaratoria*. Argumentaron que, en virtud de lo dispuesto en la Escritura Núm. 143, la propiedad de los predios de Urb. Vega Serena fue transferida a la APVS. Utilizaron como fundamento el hecho de que el párrafo cuarenta y tres (43) establece:

> Miembro Clase ¨B¨, [...] hasta la fecha de transferencia de control de la Asociación (¨Fecha de terminación clase B¨), que será la más cercana de las siguientes fechas: (a) Cuando el noventa por ciento (90%) de las unidades [...] se hayan segregado y vendido; [...] el PROPIETARIO anuncie mediante documento escrito la transferencia de control de la Asociación [...].

El 17 de enero de 2024, NSB presentó una *Réplica a ¨Moción Informativa y Aclaratoria¨ y sobre Pronunciamiento*. Reiteraron que la solicitud de *Injunction* presentada por la parte recurrida ante el TPI no pretende establecer titularidad sobre los predios en controversia. Durante la vista evidenciaria celebrada por el TPI únicamente se pretendió establecer que los peticionarios, de manera intencional e ilegal, le impidieron a NSB realizar los trabajos para la conexión de la tubería sanitaria, aun contando con los permisos necesarios. De igual manera, señalaron que todavía se encuentra pendiente ante el TPI el *Injunction* permanente y la solicitud de daños.

Con el beneficio de la comparecencia de las partes, resolvemos.

## II.

### A. *El certiorari*

El auto de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. En esencia, se trata de un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163

(2020); *Medina Nazario v. McNeil Healthcare, LLC*, 194 DPR 723, 728-729 (2016); véase, además, Art. 670 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3491. Por tanto, la expedición del auto de *certiorari* descansa en la sana discreción del tribunal revisor. *Íd.; IG Builders et al v. BBVAPR*, 185 DPR 307, 337-338 (2012).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, delimita expresamente las instancias en las que este Tribunal de Apelaciones puede expedir los recursos de *certiorari* para revisar resoluciones y órdenes interlocutorias del foro de Instancia. *800 Ponce de León Corp. v. American International Insurance, supra*; *Scotiabank de Puerto Rico v. ZAF Corporation*, 202 DPR 478, 487 (2019). En lo pertinente, la referida regla dispone lo siguiente:

> [e]l recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari, en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. 32 LPRA Ap. V, R. 52.1.

Aun cuando al amparo del precitado estatuto adquirimos jurisdicción sobre un recurso de *certiorari*, la expedición del auto y la adjudicación en sus méritos es un asunto discrecional. No obstante, tal discreción no opera en el abstracto. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008). La Regla 40 del Reglamento del Tribunal de Apelaciones establece los criterios que este foro tomará en consideración para ejercer prudentemente su discreción para expedir o no un recurso de *certiorari*, a saber:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para analizar el problema.
C. Si ha mediado prejuicio, parcialidad, o error craso y manifiesto de la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración, más detenida a la luz de los autos originales, por los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B.

De otra parte, este Tribunal solo intervendrá con las determinaciones discrecionales del Tribunal de Primera Instancia, cuando se demuestre que hubo un craso abuso de discreción, prejuicio, parcialidad o error manifiesto. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). En el ámbito jurídico la discreción ha sido definida como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). La discreción se nutre de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia. *Íd.* Por lo anterior, un adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad. *Umpierre Matos v. Juelle Albello*, 203 DPR 254, 275 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**B. El *Injunction***

El Art. 675 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3421, define el *injunction* como "un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra". El *injunction* es un recurso

extraordinario que prohíbe u ordena la ejecución de un acto determinado, con el fin de evitar que se causen perjuicios inminentes o daños irreparables a alguna persona, en casos en los que no hay otro remedio adecuado en ley. *VDE Corporation v. F & R Contractors*, 180 DPR 21, 40 (2010).

El remedio extraordinario de injunction se caracteriza por su perentoriedad, por su acción dirigida a evitar un daño inminente o a restablecer el régimen de ley conculcado por conducta opresiva, ilegal o violenta del transgresor del orden jurídico. *Peña v. Federación de Esgrima de P.R.; 108 D.P.R. 147 (1978); Ortega Cabrera v. Tribunal Superior, 101 D.P.R. 612 (1973).*

El Art. 677 del Código de Enjuiciamiento Civil establece las circunstancias en las que puede concederse un *injunction*:

> (1) Cuando resultare de la petición que el peticionario tiene derecho al remedio solicitado, y dicho remedio, o parte del mismo, consistiere en impedir la comisión o continuación del acto denunciado, bien por un período de tiempo limitado, o perpetuamente.
> (2) Cuando de la petición o de la declaración jurada resultare que la comisión o continuación de algún acto, durante el litigio, habrá de causar pérdidas o daños de consideración o irreparables a alguna de las partes.
> (3) Cuando, durante el litigio, resultare que una de las partes está cometiendo, o amenaza cometer, o que se dispone a cometer, o a procurar o permitir que se cometa, algún acto de contrario a los derechos de otra de las partes, con respecto al asunto en litigio y tendente a hacer que sea ineficaz la sentencia.
> (4) Cuando una compensación pecuniaria no habría de proporcionar adecuado remedio.
> (5) Cuando fuere sumamente difícil precisar la cuantía de la compensación que habría de proporcionar remedio adecuado.
> (6) Cuando la restricción fuere necesaria para impedir una multiplicidad de procedimientos judiciales.
> (7) Cuando la obligación naciere de un fideicomiso. 32 LPRA sec. 3523.

La parte promovente de un injunction debe demostrar que, de no concederse el mismo, sufrirá un daño irreparable que no puede ser satisfecho mediante los remedios legales disponibles. *VDE Corporation v. F&R Contractors, supra.* Por ello, los tribunales deben

divisar si "la acción connota o no un agravio de patente intensidad al derecho del individuo que reclame urgente reparación". Íd.

Nuestro ordenamiento reconoce tres (3) tipos de *injunction*: (1) el *injunction* preliminar; (2) el *injunction* permanente, y; el entredicho provisional. En lo pertinente a la presente controversia, nos limitaremos a discutir el *injunction* preliminar.

Se le designa como *injunction* preliminar al ¨remedio provisional que se emite en cualquier momento de un pleito, después de haberse celebrado una vista en que las partes han presentado prueba en apoyo y en oposición de tal solicitud". *Mun. de Ponce v. Gobernador*, 136 DPR 776, 784 (1994). Su propósito es "mantener el *status quo* hasta que se celebre el juicio en sus méritos para que no se produzca una situación que convierta en académica la sentencia que finalmente se dicte al atender la petición de *injunction* permanente, o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio". *VDE Corporation v. F & R Contractors*, supra.

De ordinario, el *injunction* preliminar se emite posterior a la celebración de una vista, en la que las partes tienen la oportunidad de presentar prueba en apoyo y oposición a su expedición. El derecho sustantivo se ventilará en un juicio plenario como sucede en cualquier otro tipo de acción. *Next Step v. Bromedicon,* 190 DPR 474, 485-486 (2014).

Antes de conceder un *injunction* preliminar, el tribunal debe tomar en consideración los siguientes factores: (a) la naturaleza del daño a que está expuesto la parte peticionaria; (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley; (c) la probabilidad de que la parte promovente prevalezca; (d) la probabilidad de que la causa se torne académica; (e) el impacto sobre el interés público del remedio que se solicita, y; (f) la diligencia y la buena fe con que ha obrado la parte peticionaria. Regla 57.3 de

Procedimiento Civil, 32 LPRA Ap. V, R. 57.3; *Asoc. Vec. V. Caparra v. Asoc. Fom. Educ.,* 173 DPR 304, 319 (2008), citando a *P.R. Telephone Co. v. Tribunal Superior,* 103 DPR 200, 202 (1975). Le corresponde a la parte promovente demostrar la existencia de estos factores. *Puerto Rico Telephone Co. v. Tribunal Superior, supra.*

**El hecho de que se expida un *injunction* preliminar no significa que se esté adjudicando ni prejuzgando los méritos del recurso presentado.** *Íd.* (Énfasis nuestro).

La concesión de una orden de *injunction* permanente, de *injunction* preliminar o de entredicho provisional descansa en la discreción del tribunal sentenciador. Debido a esto, **la decisión que concede o deniega la orden no será revocada en apelación, a menos que se demuestre que el foro apelado abusó de su facultad discrecional.** *Next Step Medical v. Bromedicon et al., supra,* 487; *ELA v. Asoc. de Auditores,* 147 DPR 669, 680 (1999). (Énfasis nuestro).

### III.

Nos corresponde justipreciar si debemos ejercer nuestra facultad discrecional al amparo de los criterios enmarcados en la Regla 40 del Tribunal de Apelaciones, *supra.* Luego de examinar el expediente a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, *supra,* no identificamos razón por la cual este Foro deba intervenir. Ello, ya que no se presentan ninguna de las situaciones que allí se contemplan. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios o postsentencia en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo. Reiteramos que en el recurso que aquí atendemos no se nos ha demostrado que haya alguno de estos

escenarios. Por tanto, el TPI actuó correctamente al emitir el Interdicto Preliminar. Además, no existen razones para el entender que el TPI actuó bajo parcialidad, arbitrariedad o abuso de discreción.

**IV.**

Por los fundamentos antes expuestos, se deniega el recurso de Certiorari, se levanta la paralización de las obras emitidas mediante Resolución de 13 de octubre de 2023 y se ordena la continuación de los procedimientos ante el TPI.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones